

## In The
## Court of Appeals
## Seventh District of Texas at Amarillo

No. 07-23-00202-CV

IN THE MATTER OF THE MARRIAGE OF JEFFREY WAYNE
MAYNARD AND TIFFINI SWEET MAYNARD

On Appeal from the 47th District Court
Randall County, Texas
Trial Court No. 79774-A, Honorable Dan L. Schaap, Presiding

June 26, 2024

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

This appeal from a final decree of divorce dividing marital property tests the distinction between one's personal goodwill and commercial goodwill. Personal goodwill, which includes the value of one's confidence in a professional's skills and abilities, for example, is not a property right that is subject to division on divorce.[1] Commercial goodwill, which is subject to division upon divorce, "exists separate and apart from a professional's personal skills, ability, and reputation."[2] Appellant, Tiffini Sweet Maynard

---

[1] *Nail v. Nail*, 486 S.W.2d 761, 764 (Tex. 1972).

[2] *Keith v. Keith*, 763 S.W.2d 950, 952 (Tex. App.—Fort Worth 1989, no pet.).

(Wife), presents three issues challenging the trial court's division of the community estate. Appellee is Jeffrey Wayne Maynard (Husband). For the reasons set forth below, we overrule Wife's issues and affirm the judgment of the trial court.

**Background**

Husband and Wife married in 1998 and ceased living as spouses in 2021. Husband began a career as a financial advisor in the early 2000s. On December 15, 2014, Husband and MKD Financial Services, LP, entered into an agreement memorialized in a document titled "Non-Compete Representative Agreement." According to the agreement, Husband, as MKD's independent contractor, would "solicit[] purchases of securities." Husband's compensation for services rendered under the agreement was stated to be commission-based. For business written by Husband after June 1, 2014, he would receive "35% on 401(k) and Individual Client net revenue."

For business written before April 1, 2014, Husband would receive "52% on 401(k) and Individual Client net revenue generated by [Husband's] efforts." An "override agreement" for business written before April 2014, allowed Husband to increase his compensation percentage from 52% to 64% if "net GDC" exceeded $700,001. A paragraph entitled "Client Relationship," the agreement stipulated that "[o]nly those clients listed and agreed upon on Exhibit B . . . are deemed clients of [Husband] and with whom [Husband] shall be entitled to continue business following termination of this agreement." It is undisputed that Exhibit B was never generated.

The trial court rendered a divorce on January 4, 2023, and signed the decree on February 28, 2023. On Wife's request, the court made numerous findings of fact and

conclusions of law, which included the following regarding the non-compete agreement between Husband and MKD:

> [T]he right to receive a greater share of revenue in the future for business written prior to 4/1/2014 in paragraph 2 of the 2014 Non-Compete Representative Agreement is not a marital asset for which division is appropriate.
>
> There was no commercial goodwill transferred to MKD by virtue of [Husband's] personal employment with the company or by virtue of the Agreement.
>
> The right to receive a greater share of revenue for business written prior to 4/1/2014 in paragraph 2 of the 2014 Non-Compete Representative Agreement is income earned for services and is Husband's future separate property.

This appeal followed.

## Analysis

Through three issues, Wife argues the trial court abused its discretion[3] in dividing the marital estate because it failed to make a just and right division of property regarding the agreement's sale of commercial goodwill. The Texas Family Code requires a "just and right" division of the community estate when spouses divorce. TEX. FAM. CODE ANN.

---

[3] The Fort Worth Court of Appeals recently discussed the applicable standard of review for family law community division questions:

> In family-law cases, the traditional sufficiency standards of review overlap with the abuse-of-discretion standard of review; therefore, legal and factual insufficiency are not independent grounds of error but are relevant factors in our assessment of whether the trial court abused its discretion. To determine whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the trial court's decision, we must determine (1) whether the trial court had sufficient evidence upon which to exercise its discretion and (2) whether the trial court erred in its application of that discretion. The applicable sufficiency review comes into play with regard to the first question.

*Rice v. Rice*, No. 02-21-00413-CV, 2023 Tex. App. LEXIS 39, at *23 (Tex. App.—Fort Worth 2023, no pet.) (mem. op.) (internal citations omitted).

3

§ 7.001.  As noted above, there is a distinction between personal goodwill (which is not a part of community property) and commercial goodwill (which may be).  Relevant here, we examine whether goodwill exists independent of the personal ability of the professional spouse, and if so, whether that goodwill has a commercial value attributable to the marital estate.  *Hill v. Hill*, No. 02-12-00332-CV, 2014 Tex. App. LEXIS 292, at *15 (Tex. App.— Fort Worth Jan. 9, 2014, no pet.) (mem. op.).  Determining the existence of goodwill and its value are fact questions for the trier of fact, which in this case is the trial court.  *Hill,* 2014 Tex. App. LEXIS 292, at *23.

The trial court was asked to answer this question: is any part of the compensation paid to Husband for business written before April 1, 2014, properly attributed as commercial goodwill?  Wife argues, "The Agreement [] unambiguously calls for the conveyance of Husband's commercial goodwill to MKD."  Wife contends the non-compete agreement's two-tier compensation arrangement – which pays "almost twice as large a share of revenue" for "Legacy" (i.e., pre-April 2014) clients – constitutes proof that such compensation serves as consideration for obtaining Husband's clients (commercial goodwill).

Wife supports her position with the expert testimony of Owen Dahl.  Dahl compared the percentage to be paid to Husband for Legacy versus new clients and found that pre-2014 clients carry a 32-point premium.  He attributes this portion to a sale of Husband's client book to MKD, adding that the percentage is "the industry norm" for a sale of clients.  However, as to why Husband would receive the same percentage for a sale of clients as obtaining and maintaining clients, Dahl equivocated, testifying, "[A]s I said, I don't know if that's coincidental or purposeful, but it's interesting for sure."

Husband denied bringing a list of clients to MKD and responded "I don't know" when asked about receiving proceeds from any sale. He testified that the purpose for the agreement's payment terms was "[t]o get a revenue split more in line with a typical advisor."[4] Husband initially explained the differential between payment for "Legacy" and "new" clients as "[j]ust the agreement we came up with." However, he later added that because the agreement paid roughly 65% for pre-April 2014 clients and "flopped" to approximately 35% for new clients, he and MKD are reaching an intended overall revenue formula "closer to 50/50."

In addition, Husband testified he must continue to "service the client" to maintain relationships and earn commissions. He agreed that once a client invests with him, he cannot just "sit back in a chair" but must continue to provide services. Husband offered the testimony of Nick Mears who opined, "any goodwill attributable to [Husband's] client list would be related to [Husband] . . . in his capacity as an expert in his field."

Wife's argument on appeal is that because Husband is being paid more for existing clients than new clients, "the only reasonable interpretation of the Agreement and the surrounding circumstances" is that Husband is being paid for assigning such clients to MKD. There are two problems with this position. First, even if we agreed with Wife's theory, there is no evidence that Husband actually earned additional compensation under the override agreement. We decline to speculate how the *right* to receive community

---

[4] Husband testified that due to a prior agreement, he had been "paid much higher than a typical advisor" at the time he entered into the agreement with MKD.

5

property materially affects the just and right division of the estate in the absence of evidence regarding actual property value.[5]

Second, we disagree with Wife's assumption that a greater percentage of compensation paid to Husband for Legacy client revenue necessarily represents sale value. The trial court possessed the sole prerogative to assess the weight and credibility of the witnesses and their conflicting evidence. Such evidence included a non-sale explanation for why Husband and MKD calculated different income formulas for pre-April 2014 clients and new clients. Moreover, Husband's testimony permitted the trial court to conclude that any sale to MKD would have no value unless Husband continued to use his personal skills and abilities (i.e., personal goodwill) to maintain the accounts. When evidence of a substantive and probative character supports its decision, the trial court does not abuse its discretion. *See Debrock v. Debrock*, No. 03-21-00308-CV, 2022 Tex. App. LEXIS 9454, at *38 (Tex. App.—Austin Dec. 28, 2022, pet. denied) (mem. op.).

Finding no abuse of discretion, we overrule Wife's three issues.

## Conclusion

We affirm the judgment of the trial court.

Lawrence M. Doss
Justice

---

[5] The trial court was free to disregard Dahl's estimates of what Husband *might* collect in the future.